# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

TRAVIS MANNING,                                                                                          PLAINTIFF
ADC #1445583

v.                                              2:19CV00147-BSM-JTK

MARSHALL DALE REED, et al.                                                                  DEFENDANTS

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

### **INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miler. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

1

      2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

      3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Travis Manning, a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging several different claims against several defendants. (Doc. Nos. 2, 11, 26) On June 2, 2020, this Court dismissed the following claims: deprivation of property, denial of access to the courts, false imprisonment, excessive confinement, retaliation, unconstitutional conditions, and negligence. (Doc. No. 44) The Court also dismissed Defendants Reed, Andrews, Barden, Jenkins, Naylor, Kelley, and Does. (Id.) And, on

October 22, 2020, the Court granted the Motion for Partial Summary Judgment on the issue of exhaustion, filed by Defendants Deen and Kelly. (Doc. No. 84)

This matter is now before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendant Fidel Cobb. (Doc. Nos. 123-125). Plaintiff filed responses to the Motion (Doc. Nos. 134, 137, 141), and Defendant filed a response to Plaintiff's objection (Doc. No. 135)

## II.     Second Amended Complaint (Doc. No. 26)

Plaintiff alleged that on February 2, 2019, while housed in administrative segregation, he asked Defendant Cobb to check with a law library employee about original legal documents which had not been returned to him. (p. 12) Cobb became agitated, angry, and upset, and Plaintiff asked to speak with his supervisor. (Id.) Cobb became more angry and told Plaintiff to pack his property, which Plaintiff questioned, and Defendant responded that he would be back. (Id.) Cobb returned about thirty minutes later and sprayed Plaintiff with a chemical agent and transferred him to punitive isolation, where Plaintiff remained for twenty-one days without a hearing which ordered him to serve in punitive isolation. (Id.) Plaintiff further alleged that the acting Warden, Jeffery Deen, authorized the unnecessary use of chemicals on him, and Cobb unnecessarily sprayed him. (Id., p. 13) In addition, Defendant Kelly watched the unnecessary use of force and failed to act to protect Plaintiff. (Id.) Plaintiff asked for monetary and injunctive relief for violations of his Eighth Amendment rights and state law assault and battery. (Id., p. 32)

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Excessive Force

#### 1) Defendant's Motion

Defendant asks the Court to dismiss Plaintiff's excessive force claim against him for failure to prove that Defendant's actions violated his constitutional rights, and based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would

4

have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In support of his Motion, Defendant presented a copy of Plaintiff's deposition testimony (Doc. No. 123-1), Cobb's Declaration (Doc. No. 123-2), the disciplinary violation and hearing report (Doc. No. 123-3), and the ADC Use of Force policy (Doc. No.

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

123-4).

### a) Plaintiff's deposition testimony (Doc. No. 123-1)

Plaintiff testified he was housed in Max 8 barracks of the EARU on February 2, 2019. (pp. 4-5) He had been trying to get legal work from the law library, and asked to speak with a supervisor. (p. 12) Defendant Cobb came to his cell after Plaintiff refused to let anyone else use the telephone and after Plaintiff cut the telephone cord and tied it around his toilet. (pp. 12-13) Cobb told Plaintiff to pack up his property, but Plaintiff refused, and admitted that he destroyed the telephone cord. (pp. 14-15) When Cobb returned about thirty minutes later, Plaintiff asked where the Captain was and told Cobb he did not want to talk to him. (p. 20) He stated, "one thing led to another where I'm sprayed with chemicals," and that as soon as Kelly showed up, he went to the door of the cell, caught the cuffs and went with Captain Kelly. (pp. 19-20) Plaintiff stated that he did not believe Cobb when he told him that if he did not catch the cuffs Cobb would use chemical spray, because Plaintiff stated that he did not have a reason to catch the cuffs. (p. 25) He admitted that as long as Cobb told him to catch the cuffs, he would refuse because he had the right to talk with a supervisor if he did not think he was being treated fairly. (pp. 26-31) He also stated that he never saw the spray can in Cobb's hand and that Kelly came to the door after Cobb sprayed him several times. (Id.) Plaintiff admitted that he tied the telephone cord around the toilet and hung a sheet up in his cell for privacy. (pp. 32-33) Although he was offered a decontamination shower, he declined, and also refused to speak with the nurse they sent to check on him because Plaintiff didn't like him. (pp. 34-35.) Plaintiff stated that he did not

remember Cobb ordering him to catch the cuffs, but admitted that he was usually cuffed when he was moved. (p. 17) Plaintiff did not think Cobb had a just reason to order him to pack up, and he admitted that he did not pack and that he received a "minor" disciplinary charge. (pp. 17-19)

### b)   Cobb's Declaration (Doc. No. 123-2)

Defendant Cobb was a Lieutenant at the EARU when the incident occurred, and he charged Plaintiff with multiple disciplinary violations, all of which Plaintiff was convicted. He complied with the use of force policy and had the authority to use the least amount of force possible on Plaintiff.

### c)   Disciplinary Charge (Doc. No. 123-3)

According to Cobb's statement of the incident, on February 2, 2019, he was informed that Plaintiff threatened to dash an officer and had pulled the telephone cord inside of his cell and tied it to something. Cobb went to speak with Plaintiff and saw water coming out of the cell and down the tier, and also a sheet tied so that it blocked the view of the cell. Cobb gave Plaintiff a direct order to remove the sheet and stop his actions, and Plaintiff replied, "f…you." Cobb then informed Captain Kelly of the situation and Kelly told the duty Warden, Major Deen, who gave permission to use the least amount of force necessary. Cobb and two other officers then went to Plaintiff's cell and gave him several direct orders to come to the door and submit to restraints, or force would be used. Plaintiff refused and Cobb deployed a burst of chemical agent inside the cell. When Plaintiff refused several more orders to submit to restraints, Cobb sprayed a second burst of chemical agent

and gave several more orders. Plaintiff refused until Kelly came and gave him a direct order, and then he complied and was removed from his cell. Plaintiff refused a decontamination shower and medical treatment and was placed on behavior control. After the incident, Cobb charged Plaintiff with the following: failure to keep person/quarters within regulation, resisting apprehension, insolence to a staff member, failure to obey staff order, unauthorized use of state property, and destruction of property.

After a hearing on February 12, 2019, Plaintiff was found guilty of all charges based on the charging officer's statement, witness statement, and photographs. He received restrictions and a reduction in class and his convictions were affirmed on appeal.

### d) Use of Force Policy (Doc. No. 123-4)

ADC Administrative Directive (AD) 15-18 authorizes the use of force "to maintain safety and security, and non-deadly force may be used when necessary in order to restrain, maintain or gain control of an inmate(s) with a minimum of injury to staff, inmate(s) and others." This incudes the use of non-deadly force to protect individuals, property, and to compel compliance with orders "when other methods of persuasion are not effective…." In addition, "only the amount of force necessary should be used," and "the level of force shall be directly related to the amount of force used by the inmate." Prior to the use of chemical agents, the subject should be warned.

### 2) Plaintiff's response

Plaintiff complained that he was not permitted to conduct proper discovery in this matter. He also stated that the incident began when Defendant refused his request to speak

with a supervisor concerning his legal material. Cobb became agitated and told plaintiff to pack his property, and when Cobb returned, Plaintiff requested to speak with his supervisor. Cobb then used unnecessary force on Plaintiff in a malicious and sadistic manner to cause pain and harm.

### 3) Analysis

To support an excessive force claim, Plaintiff must allege and prove that force was not applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Factors to be considered in determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. 34, 37 (quoting Hudson v. McMillian, 503 U.S. at 7). While a "limited application of cap stun to control a recalcitrant inmates constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of force." Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)).

In Burns v. Eaton, an inmate who refused to submit to hand restraints when returning from his shower was sprayed with chemicals when he responded by throwing a shampoo bottle at the officer and spitting at him. 752 F.3d 1136, 1140 (8th Cir. 2014) The Court held that the use of

force was appropriate and did not violate the Eighth Amendment, and noted that because the inmate refused the officer's orders, the officer "faced a recalcitrant inmate." Id. at 1140. In addition, in Sylvester v. Kelley, an inmate who failed to remove his hand from the trap despite two direct orders, alleged that an officer struck his hand twice with the trap bar. No. 5:18cv00120-JM-JTK, 2019 WL 3244590 (E.D.Ar. 2019) The Court held that Plaintiff presented no evidence that the officer acted sadistically to cause harm, but that he acted only in good faith to maintain or restore discipline. Id. *3.

In this case, Plaintiff admitted in his deposition that he refused Cobb's direct orders several times, insisting that he had a "right" to speak with a supervisor. He also admitted that he cut and tied the telephone cord around the toilet, that he hung a sheet in his cell, and that he refused offers of decontamination and medical assistance. Furthermore, Plaintiff admitted that his injuries were "small," such as burning of the skin, agitation, and disorientation. (Doc No. 123-1, p. 38) Although he claims in his response that Defendant's actions were malicious and sadistic, Defendant presented sufficient documentation to support a finding that his actions were reasonable after attempting to resolve the situation. Therefore the Court finds as a matter of law that Defendant Cobb acted reasonably under the circumstances and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation or a constitutional or statutory right.

  **B.**  **State law claims**

Upon dismissal of Plaintiff's federal constitutional claims against Defendant, the Court declines to exercise supplemental jurisdiction over his state law claims of assault and battery. McLaurin v. Prater, 30 F.3d 982, 984-94 (8th Cir. 1994).

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 123) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 8th day of June, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE